**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

LYNNETTE CUTLIP                                     :
35 Quest Road                                       :     CIVIL ACTION
Levittown, PA 19057                                 :
                                                    :
            Plaintiff,                              :
     v.                                             :     No.:
                                                    :
STAR GROUP, L.P. d/b/a STAR GROUP                   :
9 West Broad Street, Suite 310                      :
Stamford, CT 06902                                  :     **JURY TRIAL DEMANDED**
                                                    :
            and                                     :
                                                    :
ORTEP OF PENNSYLVANIA, INC. d/b/a                   :
PETRO HOME SERVICES                                 :
9 West Broad Street, Suite 310                      :
Stamford, CT 06902                                  :
                                                    :
            Defendant.                              :
                                                    :

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1.     This action has been initiated by Lynnette Cutlip ("Plaintiff") against Defendants

Star Group, L.P. d/b/a Star Group ("Defendant Star Group") and Ortep of Pennsylvania, Inc.

d/b/a Petro Home Services ("Defendant Ortep") (collectively, "Defendants") for violations of the

Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 et. seq.); the Family

and Medical Leave Act ("FMLA" - 29 U.S.C. §§ 2601 et. seq.); and the Pennsylvania Human

Relations Act ("PHRA" – 43 P.S. §§ 951 et seq.).[1]

---

[1] Plaintiff intends to amend her instant lawsuit to include claims under the PHRA once her administrative remedies are fully exhausted with the Pennsylvania Human Relations Commission ("PHRC").

2.      Defendant utterly botched its obligations under the ADA and FMLA, mishandled Plaintiff's requests for FMLA and reasonable accommodations, and then terminated Plaintiff for requesting reasonable accommodations and utilizing FMLA leave for her own serious health conditions and disabilities.

3.      As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

4.      This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States. There lies supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as Plaintiff's federal claims set forth herein.

5.      This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

6.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district; and in addition, Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a resident of the Eastern District of Pennsylvania.

7.      Plaintiff has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and

by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## **PARTIES**

8. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

9. Plaintiff is an adult individual residing at an address as set forth in the caption.

10. Defendant Ortep is a for-profit corporation formed under the laws of Pennsylvania with a principal place of business as set forth in the caption.

11. Defendant Star Group is a limited partnership formed under the laws of Delaware with a principal place of business as set forth in the caption.

12. Defendants jointly owned and operated a business at 650 Knowles Avenue, Southampton, PA 18966, with this location doing business as "Petro Home Services."

13. Petro Home Services is registered as a fictious business by entities such as Petroleum Heat, Power Co. Inc., and Defendant Ortep (hereafter referred to collectively as "Petro").

14. Petro engages in the business of providing home heating oil, propane, air conditioning, plumbing, generator, chimney, and other services.

15. Petro is owned, operated, and managed by Defendant Star Group.

16. Defendant Star Group represents that Petro is merely one if its many "brands" (via online marketing) along with other lines of business such as Patriot Propane, Meenan, and at least a dozen other brands.

17. All operations of Petro are directed, supervised, and controlled from Defendant Star Group's Connecticut headquarters. All of these entities are collectively referred to as "Defendants."

18. The term "Defendants" as used herein should be construed to include all parent, subsidiary, and affiliated entities which may properly be considered Plaintiff's single, joint, and/or integrated employers.

19. At all times relevant herein, Defendants acted by and through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

## FACTUAL BACKGROUND

20. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

21. Plaintiff was hired by Defendants on or about March 9, 2021.

22. As of Plaintiff's termination from employment, her immediate supervisor was Jason Glessner ("Glessner").

23. Glessner represents publicly on his LinkedIn (online) page that he is a "Service Manager" employed by "Meenan" for Defendants.

24. Glessner's work for a different brand (Meenan) while managing Plaintiff (and Petro-brand employees) just further demonstrates that Defendant Star Group utilizes employees across its brands (as a single enterprise).

25. Company policies and handbook procedures (and FMLA documents or approval forms) given to Plaintiff during her employment also state "Star Group LP" on the very policies or forms as well (as issued by Defendant Star Group).

4

26.    Any communications about work matters, Plaintiff's leave needs, or other HR-matters were handled by and through HR personnel of Defendant Star Group.

27.    At the time of her termination, Plaintiff was indirectly supervised by Jim Orliw ("Orliw"), a General Manager of Defendants.

28.    In total, Plaintiff was employed by Defendants for approximately 4.5 years.

29.    Plaintiff was terminated by Defendants on or about December 31, 2025.

30.    During this timeframe, Plaintiff was a full-time employee performing a variety of duties and titled Service and Propane Coordinator.

31.    Plaintiff has significant physical health problems related to her back and neck (among other complications).

32.    Plaintiff's aforementioned medical conditions are permanent and have required ongoing medical treatment, therapy, pain management, medication, and surgical procedures.

33.    As a result of these aforementioned serious medical conditions/disabilities, Plaintiff is, at times, substantially limited in performing daily life activities such as standing and walking.

34.    ***Plaintiff was directly informed on or about December 21, 2025 that she was terminated <u>because of</u> her health and medical-leave needs***.

35.    Plaintiff sought and was approved for leave under the FMLA in or about mid-2022 (after having been employed for one (1) year and becoming eligible).

36.    Plaintiff estimates having first been approved for use of intermittent FMLA in or about June of 2022.

37.    Prior to 2022 and following 2022 (throughout the duration of her employment), it is also worth noting that intermittent partial or full days off from work due to Plaintiff's health

problems are separately protected under the PHRA and ADA (state and federal anti-discrimination laws requiring accommodations). *See e.g. Smith v. N. Shore-Long Island Jewish Health Sys.,* 286 F. Supp. 3d 501, 525 (E.D.N.Y. 2018) ("[T]he Court finds [plaintiff] to be qualified within the meaning of the ADA with the reasonable accommodation of intermittent leave."); *Hall v. Wash. Metro. Area Transit Auth.,* 2020 U.S. Dist. LEXIS 183477, at \*36 (D.D.C. Oct. 2, 2020) (counting disability-related absences against plaintiff can constitute denial of a reasonable accommodation); *Westbrooks v. Baltimore Cty.,* 2019 U.S. Dist. LEXIS 140647, at \*34 (D. Md. Aug. 20, 2019) (reasonable jury could conclude employer failed to consider reasonable accommodation of absenteeism for employee).

38.    Plaintiff was given her first annual evaluation by Defendants on or about April 27, 2022 with her identified reviewers being John Mazurek and Stephen Nielsen (managers from Petro) and Human Resources through Defendant Star Group.

39.    In all rated categories, Plaintiff was identified as performing very well (except in the category of "Accountability and Dependability").

40.    Twice in Plaintiff's performance evaluation her "attendance" was negatively referenced.

41.    It was known to Defendants' management that Plaintiff's absences were medical related.

42.     It was discriminatory to make such a reference when medical accommodations for medical absences *should not have been considered* in a performance evaluation.

43.    Plaintiff was given her second annual evaluation by Defendants on or about April 19, 2023 with her identified reviewers being John Mazurek and Stephen Nielsen (management from Petro) and Human Resources through Defendant Star Group.

44.     Throughout her evaluation, Plaintiff was identified as performing very well in general.

45.     However, Mazurek (her then manager) rated Plaintiff again "Needs Improvement" in the category of "Accountability and Dependability."

46.     Mazurek referenced her "FMLA" inappropriately in her evaluation score within this category.

47.     Moreover, if FMLA time were excluded from consideration, Plaintiff did not generally miss more (non-FMLA) time than her peers.

48.     Her score in this evaluation was again discriminatory and retaliatory.

49.     Glessner and Orliw had supervised Plaintiff in the 2024 – 2025 timeframe.

50.     On or about March 20, 2025, Plaintiff was presented with her last issued annual evaluation.

51.     In *all categories except for* "Accountability and Dependability," Plaintiff was rated meeting or exceeding expectations.

52.     Plaintiff worked extremely hard, performed at a high level, and was very thorough (with a very sizeable workload).

53.     Plaintiff's excellent record of performance was undeniable and reflected in her evaluation feedback.

54.     By way of examples, Defendant's management wrote about Plaintiff: (1) "produc[ing] results when not actively managed;" (2) "goes above and beyond to help any customer; " (3) "very respectful with employees and customers;" (4) "keeps superiors up to date on any issues;" (5) "can be counted on to meet or exceed monthly goals" and is "very organized and good at multi-tasking;" (6) "manages her time effectively and efficiently;" (7) "very detail

oriented" and "understands and complies with company policies;" and (8) numerous other comments identified Plaintiff performing *in an exemplary manner.*

55.    Plaintiff was frankly so caring, hardworking, and good at her job that there was no way to rate Plaintiff negatively in her last evaluation (issued March 20, 2025) - - or any evaluations for that matter.

56.    Despite all of this, Plaintiff was given a "Needs Improvement" for a third year in a row in the category of "Accountability and Dependability."

57.    Glessner wrote: "Needs to work on attendance issue as in the past."

58.    But, Plaintiff's time off was related to medical accommodations, flareups of her health, and FMLA usage.

59.    As of the spring of 2025, Plaintiff formed the opinion that Defendants had a discriminatory practice of referencing attendance – even if for medical reasons – to discourage FMLA usage or ongoing ADA accommodations.

60.    By 2025, Plaintiff was unfortunately having more flareups and struggling more with health complications than in prior years.

61.    Whether Plaintiff used more or less FMLA though - - it is still FMLA (federally-protected job absenteeism).

62.    For example, prior to 2025, her FMLA usage in submitted certifications was identified as Plaintiff needing to miss potentially up to "4" "times per month."

63.    However, Defendants had been questioning Plaintiff for missing more FMLA time than estimated in her past FMLA certification(s).

64.    Plaintiff was thus required by Defendants to recertify and provide updated proof that Plaintiff needed more FMLA time than had been previously approved (in mid-2025).

65.    Leading up to Plaintiff's recertification request, Glessner had made comments along the lines of "you are out a lot."

66.    On such occasions, Plaintiff assured him that she was missing time for her health complications.

67.    Glessner would make an occasional such comment despite that her prior absence was an FMLA callout.

68.    Through July of 2025, Plaintiff was communicating back and forth with human resources and Glessner (who was part of email correspondence) about her FMLA updates and recertification status (since HR includes management).

69.    On or about August 1, 2025, Marlene Baker ("Baker") confirmed her then-current FMLA standing.

70.    Baker was HR personnel for Defendant Star Group.

71.    After providing all requested medical and FMLA-related documentation, Baker wrote: "Hi Lynnette, your records were updated to reflect that FMLA is now 10 times monthly and can last up to 5 days."

72.    Baker had been copying her management on all such communications and did so with Glessner in this case as well.

73.    Plaintiff was very concerned that Defendants have a practice and policy of condoning employees receiving negative evaluations for medical absences.

74.    Plaintiff was also very concerned that Defendants have a practice and policy of sharing all medical information with an employee's management.

75.    Plaintiff believed both such practices were *per se* unlawful.

76.     Plaintiff should have been afforded privacy with her medical matters. They should have been kept confidential and approvals for FMLA or time off should have been through a designated leave administrator or human resources personnel.

77.     Yet, Defendants instead elected to freely share all health and FMLA matters with her management. This improper and/or unlawful practice is of course going to likely lead to discrimination or retaliation.

78.     In 2025, Plaintiff was using more FMLA-leave time on an intermittent basis (which also comprises a PHRA and ADA accommodation as aforesaid).

79.     There was also a change in attitude and demeanor towards Plaintiff by Glessner and Orliw.

80.     By the second half of 2025, they had become somewhat abrasive, less friendly, and somewhat annoyed with her presence (from tone and body language).

81.     By the fall of 2025, Plaintiff was being asked to train someone named Jeaninne Micucci ("Micucci").

82.     Plaintiff of course obliged, as she was dedicated and did anything asked of her.

83.     Plaintiff asked Glessner if she was being replaced by Micucci and if he was having Plaintiff train her replacement.

84.     Glessner responded of course not, confirmed Plaintiff was a great performer and an asset to the company, and said the company just wanted a second person because Defendants were so busy and he wanted coverage when Plaintiff used FMLA days.

85.     Glessner explained the company would use two (2) people for her similar role moving forward.

86.    Prior to Micucci's hire, Plaintiff was permitted to work from home on occasion when she had flareups.

87.    Plaintiff was fully capable of performing the essential functions of her job while working from home and did so many times without incident.

88.    On or about December 9, 2025, Glessner told Plaintiff that Defendants do not want anyone working from home.

89.    Glessner's statement that Plaintiff could no longer work from home was an about face from her previous ability to work from home during her flareups.

90.    *But, Defendants did in fact allow other employees besides Plaintiff to work from home.*

91.    After Plaintiff was told that she could no longer work from home, she had no choice but to call out sick and/or use FMLA time when she had a flareup even though she could have worked from home on these dates.

92.    On or about December 31, 2025, Plaintiff was informed that she was being terminated from her job.

93.    Glessner and Orliw informed Plaintiff – in her opinion – that she was being terminated because of her health or leave needs.

94.    In the days leading up to her termination, Plaintiff was telling Glessner of some alternative medical treatment she was seeking to help alleviate her health problems.

95.    Orliw at the time of termination told Plaintiff things like: "Jason told Plaintiff you are going to try other things for your back and neck," "things are not changing," "looks like your health is getting worse," and "you are still missing a lot of time." These are *some of the* comments conveyed to Plaintiff at time of termination.

11

96. Thus, Plaintiff wholeheartedly believed that she was absolutely terminated for discriminatory and retaliatory reasons.

97. Plaintiff also believes that she did in fact train her replacement, contrary to the falsities in which she was being told pre-termination.

**COUNT I**
**<u>Violations of the ADA</u>**
**([1] Actual/Perceived/Record of Disability Discrimination; [2] Retaliation; and [3] Failure to Accommodate)**

98. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

99. Plaintiff suffers from qualifying health conditions under the ADA, which affected her ability (at times) to perform some daily life activities (set forth *supra*).

100. Despite Plaintiff's health conditions and limitations, she was still qualified and able to perform the duties of her job well with Defendants.

101. Prior to her pretextual termination, Plaintiff disclosed her aforementioned disabilities/serious medical conditions and need for accommodations to Defendants' management and was subjected to animosity and antagonism regarding the same.

102. Defendant failed to accommodate her disabilities by counting ADA-qualifying absences against her in making the decisions to give her negative comments on her performance evaluations and to terminate her employment.

103. After repeatedly writing negative comments on her performance evaluations and denying her the reasonable accommodation of working from home in violation of the ADA, Plaintiff was terminated from her employment with Defendants for discriminatory and retaliatory reasons, and as a direct result of Defendants' failure to accommodate her disabilities.

104.    Plaintiff therefore avers that her actual/perceived disabilities or record of impairment were a motivating/determinative factor in the termination of her employment with Defendants.

105.    Plaintiff also avers that she was terminated in retaliation for engaging in protected activity (requesting and using reasonable accommodations) under the ADA.

106.    Defendants' actions as aforesaid constitute violations of the ADA.

## COUNT II
### Violations of Family and Medical Leave Act ("FMLA")
### (Wrongful Termination - Interference & Retaliation)

107.    The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

108.    Plaintiff was a full-time employee who worked for Defendants for more than one (1) year within a location that employed at least 50 employees within 75 miles.

109.    For over three (3) years, Defendants were on explicit notice of Plaintiff's serious health conditions and need for leave, but failed to designate her leave as FMLA qualifying or provide her notification of her FMLA rights.

110.    After being denied the reasonable accommodation of working from home during her flareups in or around December 2025, Plaintiff exercised her FMLA rights and had additional FMLA leave eligibility remaining at the time of her termination.

111.    After being approved for intermittent FMLA, Defendants' management failed to designate FMLA-qualifying absences properly and eventually terminating her for absences that should have been designated as protected FMLA leave.

112.    Defendants' termination of Plaintiff is extremely suggestive and was done in close proximity to her most recent usage of FMLA-qualifying leave.

13

113. The motivating and/or determinative factor in deciding to terminate Plaintiff's employment and/or not re-hire her was: (a) her requests and/or use of FMLA; (b) to prevent her from utilizing future FMLA leave; and/or, (c) to dissuade her or others from utilizing FMLA.

114. Defendant committed interference and retaliation violations of the FMLA by inter alia: (1) terminating Plaintiff because she requested FMLA and/or exercised her FMLA rights; (2) considering Plaintiff's FMLA leave needs in making the decision to terminate her; (3) terminating Plaintiff to prevent her from taking FMLA-qualifying leave in the future; (4) taking actions towards her that would dissuade a reasonable person from exercising her rights under the FMLA; and/or, (5) failing to follow proper notice, designation, and informational regulations of the FMLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendants are to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, overtime, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered unlawful payment practices, retaliation, and discrimination at the hands of Defendants until the date of verdict;

B. Plaintiff is to be awarded liquidated and/or punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

C.      Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

D.      Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

E.      Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

F.      Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law.  Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF, & CERUTTI, P.C.**

By:    _____
Ari R. Karpf, Esq. (91538)
8 Interplex Drive
Suite 210
Feasterville-Trevose, PA 19053
(215) 639-0801
akarpf@karpf-law.com

Date:  June 25, 2026

15

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Lynnette Cutlip | : | CIVIL ACTION |
| v. | : | |
| Star Group, L.P. d/b/a Star Group, et al. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.    (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.    (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court. (See reverse side of this form for a detailed explanation of special
management cases.)    (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (x )

| | | |
|---|---|---|
| 6/25/2026 | | Plaintiff |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**DESIGNATION FORM**

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                                          Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?    Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?   Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same   Yes ☐
   individual?

5. Is this case related to an earlier numbered suit even though none of the above categories apply?              Yes ☐
   If yes, attach an explanation.

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.** *Federal Question Cases:*                                    **B.** *Diversity Jurisdiction Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)   ☐ 1. Insurance Contract and Other Contracts
☐ 2. FELA                                                            ☐ 2. Airplane Personal Injury
☐ 3. Jones Act-Personal Injury                                       ☐ 3. Assault, Defamation
☐ 4. Antitrust                                                       ☐ 4. Marine Personal Injury
☐ 5. Wage and Hour Class Action/Collective Action                    ☐ 5. Motor Vehicle Personal Injury
☐ 6. Patent                                                          ☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Copyright/Trademark                                             ☐ 7. Products Liability
☐ 8. Employment                                                      ☐ 8. All Other Diversity Cases: *(Please specify)*_____
☐ 9. Labor-Management Relations                                         _____
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief **\*see certification below\***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

**ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)**

I certify that, to the best of my knowledge and belief:

☒  Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐  None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44  (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

CUTLIP, LYNNETTE

**(b)** County of Residence of First Listed Plaintiff    Bucks
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

**DEFENDANTS**

STAR GROUP, L.P. D/B/A STAR GROUP, ET AL.

County of Residence of First Listed Defendant    Fairfield
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*        Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | Liability ☐ 367 Health Care/ | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Pharmaceutical Slander Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability ☐ 368 Asbestos Personal ☐ 340 Marine Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application ☐ 840 Trademark | ☐ 460 Deportation ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle ☐ 371 Truth in Lending | ☐ 720 Labor/Management | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | Product Liability ☐ 380 Other Personal | Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| ☐ 196 Franchise | ☐ 360 Other Personal Property Damage Injury ☐ 385 Property Damage | ☐ 740 Railway Labor Act ☐ 751 Family and Medical | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) | Exchange ☐ 890 Other Statutory Actions |
| | ☐ 362 Personal Injury - Product Liability Medical Malpractice | Leave Act ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | | ☐ 895 Freedom of Information |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | | **FEDERAL TAX SUITS** | Act |
| ☐ 220 Foreclosure | ☐ 441 Voting ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment ☐ 510 Motions to Vacate | | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 245 Tort Product Liability | Accommodations ☐ 530 General | | 26 USC 7609 | Agency Decision |
| ☐ 290 All Other Real Property | ☒ 445 Amer. w/Disabilities - ☐ 535 Death Penalty Employment **Other:** | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 446 Amer. w/Disabilities - ☐ 540 Mandamus & Other Other ☐ 550 Civil Rights | ☐ 462 Naturalization Application ☐ 465 Other Immigration | | |
| | ☐ 448 Education ☐ 555 Prison Condition ☐ 560 Civil Detainee - Conditions of Confinement | Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation - Transfer   ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
ADA (42USC12101); FMLA (29USC2601)

Brief description of cause:
Violations of the ADA, FMLA and the PHRA.

**VII. REQUESTED IN COMPLAINT:**    ☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.    DEMAND $ ___    CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY**    *(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE    6/25/2026    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ___    AMOUNT ___    APPLYING IFP ___    JUDGE ___    MAG. JUDGE ___